IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY M. YOUNG-BEY, #307-062 *
       Plaintiff
   v.                                   *    CIVIL ACTION NO. JFM-10-1840

MAJID ARNAOUT, *
CORRECTIONAL MEDICAL SERVICES,
INC., *
       Defendants
                                 ***

**MEMORANDUM**

Defendants Majid Arnaout and Correctional Medical Services Inc. have filed a motion to dismiss or for summary judgment, which is unopposed.[1] ECF No. 10. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.[2] *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Plaintiff alleges defendant Majid Arnaout has "failed to diagnose and treat plaintiff's symptoms involving unexplained anemia, bloody stools, abdominal pain, chronic allergies, and microbial infections…" Plaintiff further alleges that on July 1, 2010, Arnaout had plaintiff "expelled from the clinic" and on an unspecified date advised plaintiff that: Arnaout did not treat African-American inmates for "these" symptoms; he needed money to be treated; and prisoners did not deserve medical care because "most of them are black criminals." ECF No. 1. Plaintiff states that he has suffered abdominal pain, weight loss, and anemia, hypertension, rectal bleeding, and infections for approximately four months, as of the time of the filing of his

---

[1] Plaintiff was given the requisite notice and an opportunity to oppose the dispositive motion, in compliance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and despite having sought and been granted numerous extensions of time has failed to do so. ECF Nos. 11-18.

[2] The Motion to Withdraw as Attorney (ECF No. 19) shall be granted.

compliant, without diagnoses, treatment or care. *Id*. To the extent that it plaintiff's complaint could be construed as raising state law claims, the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

**Plaintiff's treatment for bloody stool and abdominal pain**

Plaintiff's uncontroverted medical records demonstrate that on April 3 and 5, 2010, plaintiff submitted sick call requests complaining of black, tarry stools, diarrhea, abdominal pain, and frank bleeding from his rectum. He was evaluated on April 6, 2010 by Dr. Arnaout. Plaintiff told Dr. Arnaout that he had undergone a colonoscopy approximately ten years ago but did not know the results. Arnaout noted that plaintiff had not required any treatment as a result of the colonoscopy. Plaintiff's physical examination was normal; however, he refused to submit to a rectal examination. Arnaout advised Plaintiff that he needed to check for blood in plaintiff's stool and that a repeat colonoscopy could be denied if plaintiff failed to permit the rectal examination. Arnaout submitted a consultation request for a colonoscopy, requested a referral to a gastroenterologist, and ordered blood work. ECF No. 10, Ex. A & B, pp. 6-11.

On April 9, 2010, Lisa Schindler, PAC, noted that plaintiff advised her that he had submitted three fecal occult blood ("FOB") cards. No results were in plaintiff's chart; accordingly, Schindler had the tests repeated. *Id*., pp. 13-14.

Plaintiff was again evaluated by Arnaout on April 20, 2010, and again refused to permit a rectal examination. Plaintiff's most recent blood work showed no iron deficiency. On April 22, 2010, plaintiff submitted three FOB cards which tested positive for occult blood. *Id*., pp. 21-23.

On May 23, 2010, plaintiff was evaluated by Greg Flury, PAC. Plaintiff denied rectal pain or any change in his bowel habits. Flury submitted a request for consultation with a

gastroenterologist ("GI") with a possible colonoscopy. *Id*., pp. 26-31.

On June 1, 2010, utilization review approved the request for plaintiff to be seen by a GI specialist. *Id*., Ex. B, p. 29. Plaintiff was advised of the approval by Dr. Arnaout on June 3, 2010, and the procedure was discussed with Arnaout answering plaintiff's questions. *Id*., p. 30.

Plaintiff submitted a sick call request on June 20, 2010, complaining of acute abdominal pain with diarrhea and tarry stools. He was seen by Monica Metheny, R.N. who noted hyperactive bowel sounds. Plaintiff advised the nurse that he had eaten an hour before the visit. He also advised the nurse that he had a history of Helicobacter pylori ("H. pylori"). The nurse advised plaintiff that he was to be seen by a GI specialist and referred plaintiff for further assessment with Arnaout. On June 26, 2010, plaintiff submitted a similar sick call slip. *Id.,* pp. 33-36.

Plaintiff was evaluated by Arnaout on July 1, 2010. Plaintiff continued to complain of abdominal pain and diarrhea. He requested an H. pylori test. Arnaout advised plaintiff that he needed to wait for his evaluation with the GI specialist who would determine which tests should be performed. Plaintiff continued submitting sick call slips regarding the same symptoms. Flury evaluated plaintiff on July 8, 2010 and noted plaintiff was in no apparent distress and his abdomen was soft and not tender. *Id*., pp. 37-43.

Plaintiff was again evaluated by Arnaout on July 13, 2010 and complained of the same symptoms. Physical examination revealed plaintiff to be well nourished. His abdomen was soft and nontender and no masses or enlarged organs noted. *Id*., pp. 44-46.

On August 2, 2010, plaintiff was evaluated by Robert Chou, M.D. a gastroenterologist. Plaintiff advised Chou that he had a colonoscopy performed eight years ago and was told he might have a tumor. He also advised Chou that he had been having bloody stools, anemia,

weight loss, and decreased appetite for the past six months. Chou ordered a colonoscopy which was performed on September 30, 2010. The colonoscopy was normal and Chou recommended an upper endoscopy to evaluate plaintiff's stomach for any abnormalities due to plaintiff's claimed iron deficiency. *Id*., pp. 52-64. Plaintiff is not anemic and does not suffer from iron-deficiency. *Id*., pp. 1-5, 12-14, 19-20. Further, he has not suffered abnormal weight loss. *Id*., Ex. A.

**Plaintiff's complaint of chronic allergies**

Plaintiff submitted sick call requests on April 7 and 12, 2010, seeking a refill of his Benadryl (diphenhydramine) prescription. He was evaluated by P.A. Schindler on April 9, 2010. Schindler noted that Dr. Arnaout had discontinued plaintiff's prescription for antihistamines and as such, referred plaintiff to Dr. Arnaout for further evaluation. Dr. Arnaout evaluated plaintiff on April 13, 2010. Plaintiff advised Arnaout that he had a long history of nasally ingesting street drugs. Arnaout explained to plaintiff that there was no reason for him to prescribe Benadryl. Arnaout further advised plaintiff that Benadryl was contraindicated for patients such as plaintiff who had hypertension. Examination revealed a nasal septal perforation, which plaintiff stated was cause by snorting street drugs. Aranout noted no other abnormalities, drainage, or tissue swelling which would suggest allergies. Plaitniff was continued on saline nasal spray. *Id*., Ex. A & B, pp. 12-18, 79-84.

Plaintiff submitted a sick call slip on April 30, 2010 complaining that his seasonal allergies were bothering him and requesting Benadryl. The nurse responsible for screening sick call slips noted that plaintiff did not have a prescription for Benadryl. Plaintiff did not complain about allergies again until September 19, 2010. On that date he was evaluated by P.A. Schindler for athlete's foot and allergic rhinitis. Schindler noted clear drainage from plaintiff's nose as well as

a perforated nasal septum which plaintiff indicated was a result of long term cocaine use. Schindler prescribed Nasarel (a topical steroid) and Aprodine (an antihistamine). *Id*., Ex. A & B, pp. 24-27, 68-69.

**Plaintiff's Complaint of "Microbial Infections"**

Plaintiff has been treated for a rash on his right foot which first appeared on May 20, 2010. He was evaluated by P.A. Flury on May 23, 2010. Plaintiff denied itching or maceration.[3] Plaintiff reported some peeling of the skin. Examination revealed some peeling of the skin on the bottom of plaintiff's foot. Plaintiff was prescribed Nystatin, an ointment used for treating fungal infections, for one month. Plaintiff submitted no further complaints regarding the foot rash. *Id*., Ex. A & B, pp. 25-27, 32, 68-69, 79, 91.

Plaintiff also complained of a small subcutaneous cyst on the right side of his face on July 13, 2010. The cyst was not infected or inflamed and Dr. Arnaout advised plaintiff there was no need to treat the cyst. *Id*., Ex. A & B, pp. 44, 47-48. Plaintiff was evaluated on July 29, 2010, by P.A. Flury, due to his continued complaints about the cyst. Plaintiff advised Flury that the cyst was recurrent and he had been diagnosed with methicillin-resistant staphylococcus aureus ("MRSA") in the past. Flury reviewed plaintiff's available medical records but found no notation of a diagnosis of MSRA. Flury's evaluation revealed that the cyst was not infected and required no treatment. At this time, Flury provided plaintiff with triple-antibiotic ointment for an ulceration of his penis. *Id*., Ex. A& B, pp. 50-51, 93-94.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[3] Tissue breakdown caused by moisture.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

**Respondeat Superior**

Plaintiff's allegation against Correctional Medical Services, Inc. (CMS), the private prison health care provider, is based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or

other public agency. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), citing *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Plaintiff's claim against Correctional Medical Services shall be dismissed.

**Medical Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted

7

punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff has failed to demonstrate that he has been denied medical care. Medical records indicate that plaintiff received a referral to a specialist for his complaints regarding his abdominal pain. Records further demonstrate that plaintiff does not suffer from anemia or excessive weight loss. The documents show that plaintiff received adequate care for his complaints regarding allergies and "microbial infections." The medical records along with the affidavit of Dr. Arnaout refute plaintiff's assertions that he was denied medical care. Moreover, the records demonstrate that plaintiff received appropriate care regarding his complaints. Stated simply, plaintiff's bald allegations of denial of medical care amount to little more than a disagreement with the judgment of his health care providers. Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

**Discrimination**

Plaintiff alleges that Arnaout expelled him from the clinic and used racial slurs against

him. Arnaout avers he never expelled plaintiff from the clinic, but would indicate to correctional officers when he was finished treating a patient as inmates are not free to linger in the clinic indefinitely. Moreover, he avers that he never used racial slurs against plaintiff or refused to treat him because of his race, religion or ability to pay. ECF No. 10, Ex. A.

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, plaintiff's allegations that Arnaout used racist language toward him fail to state a claim.

To the extent plaintiff claims defendant's actions rose to the level of racial discrimination, it is clear that inmates have a constitutional right to be free from discrimination on the basis of race. *See Lee v. Washington*, 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman v. Reynolds*, 378 F. Supp. 1137, 1140 (W.D. Va. 1974); *see also Williams*, 926 F.2d at 998 (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation that prisoners of another race were allowed to retain more property); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (conclusory allegations of racial discrimination insufficient to state claim). A prisoner must show more than disparate impact. *See Washington v. Davis*, 426 U.S. 229, 240 (1976). A mere conclusory averment, as provided by plaintiff in the instant case, is insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc.*

*v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085 (4th Cir. 1979).

## **Conclusion**

For the reasons stated above, defendants' motion for summary judgment shall be granted. A separate order follows.


____August 25, 2011_____      _____/s/_____
Date                                                     J. Frederick Motz
                                                                           United States District Judge